# Kentucky Coal & Iron Mfg. Co. *v.* Lexington & Big Sandy R. R. Co.

**Corporations—Bonds—Approval.**

Corporate bonds are not void on account of their being made payable semi-annually in the city of New York instead of annually at Ashland, as prescribed by the order of its directors, providing for their execution and delivery, where such action was subsequently approved by the directors.

**Corporations—Stock Subscription—Payment.**

A mining and manufacturing company having the right to subscribe for stock in a railroad company, has the right to pay for the stock in money or negotiable obligations.

**Subscriptions—Rescission of Subscription.**

      'Breach by a railroad company of a contract to have the road completed between certain points without delay, will not entitle a subscriber to stock of the company to a rescission of the contract of subscription to the detriment of the creditors of the company.

**Cancellation of Instruments—Corporate Bonds.**

      A corporation was held to have the right to the cancellation of its bonds which were issued in payment for stock in a railroad company, by payment of the accrued interest and 66 2-3 cents on the dollar on the face value of the bonds.

APPEAL FROM CLARK CIRCUIT COURT.

September 30, 1873.

OPINION BY JUDGE LINDSAY:

The railroad company complied with its undertaking to change the location of its road, and expended on the work between Ashland and Little Sandy river a greater sum than was or could have been realized from the sale of appellant's bonds. This we regard as a substantial compliance with the condition in the contract of subscription requiring the railroad company to expend the amount thereof between the points named, and appellant, like all other stockholders, must be deemed to have regarded the ability of the company to complete the work.

If it be true that the railroad company as a further condition undertook to guarantee the completion of the road without delay from Little Sandy river to Cattlettsburg, the breach of this covenant cannot entitle appellant to have a rescission of the contract of subscription to the detriment of the creditors of the company, nor at the expense of those into whose hands its bonds passed in the ordinary course of business. Appellants' bonds are not void on account of the interest being made payable semi-annually in the city of New York instead of annually at Ashland, as was prescribed by the order of its directory, providing for their execution and delivery. After they had been so executed and delivered, the action of the president of the manufacturing company, was ratified and approved by the directory, when it ordered the execution of the mortgage to secure the payment of the bonds, without requiring them to be changed, so as to conform to the order under which they were originally issued.

Appellant had the power to take stock in any railroad in the

vicinity of Ashland that might facilitate the transportation of the product of its mines (Session Acts 1853-54, page 211) and having subscribed for stock in a company proposing to construct a road calculated to answer this purpose, it necessarily had the right to pay the subscription in money, or in its negotiable obligations. Possibly the payment in its bonds may have been the only way by which it could attain an end regarded as indispensable to the successful prosecuting of the mining and manufacturing business in which it was about to engage, and hence it must follow that that mode of payment was a legitimate and proper exercise of the expressly delegated power to subscribe for the stock. Angell & Ames on Corporations, Sec. 271.

At the time appellant subscribed for stock the railroad company had organized, and having made the contract of subscription, executed and delivered its bonds, and also executed a mortgage to secure their payment, it cannot now in a contest with creditors of the railroad company and holder of these bonds be allowed to raise a question as to the legality of the organization. It becomes necessary now to consider the legal effect of a contract entered into between appellant and the railroad company on the 8th day of May, 1857. Up to that time the railroad company had been unable to negotiate a large number of appellant's bonds, and being greatly embarrassed, it agreed to sell, and was to deliver to the latter sixty of its bonds for $1,000 each, for the sum of thirty-five thousand dollars, and for the same amount at 66 2-3 cents on the dollar, the interest on all said bonds to be paid till July, 1857, and then to cease. Appellant was to pay the consideration for the bonds thus purchased by taking up certain bills owing by the railroad company and then due, or about to become due, also to pay certain debts due for work, and to meet and satisfy the monthly estimates for work to be done on the railroad between Ashland and a point called Gallions and when the $35,000, the price agreed upon for the sixty bonds, was paid, the whole $170,000 worth of bonds were to be delivered, upon the further condition of appellant giving bond with satisfactory security for the payment of the balance of the purchase money.

Under this contract appellant proceeded to pay out a sum sufficient to pay for 67 bonds which were delivered and to leave a balance due it from the railroad company of between eleven thou-

sand and twelve thousand dollars. It was then discovered that the financial agents of the railroad company in the city of New York had made some fraudulent disposition of the bonds in their hands and thereby placed it out of the company's power to comply with its contract by delivering the remaining 103 bonds.

A question has been raised as to whether appellant tendered bond with sufficient security for the payment of the agreed price for the last 110 bonds, but the evidence preponderates in favor of the conclusion that such a bond was tendered. The direct allegation of appellant that such was the case is not specifically denied by Bondurant, the party directly interested in combating the truth of said allegation. He confines his denial to a want of information or knowledge upon which to form a belief as to whether the bond was tendered on the 8th day of August, 1857, but does not deny that a tender was made on some other and approximate day. The default of the railway company's New York agents resulted in its utter insolvency, and in the abandonment of its proposed work.

In these consolidated causes appellant seeks a rescission of its contract of subscription for stock in the railroad company, which relief for reasons already given was properly refused.

Bondurant's personal representative, a creditor of the railroad company, seeks to subject to the payment of a judgment in his favor fifty-three of appellant's bonds that have been recovered since said company abandoned the idea of attempting to comply with its contract of sale to appellant, entered into May 8, 1857, and also to enforce the payment of accrued interest on certain obligations of appellant, which amount to $24,000, and were intended to represent twenty-four bonds. Apperson's executor seeks the same relief, as to similar obligations held by him representing twelve bonds, and Franklin, who holds fourteen, Curtis & Bradley, who hold four, and Lamsburg, who holds six, ask similar relief.

No sufficient reason is shown why Bondurant's executor and Apperson's executor should not have the relief granted them, upon this branch of the case, and the questions touching the obligations held by them will not hereafter be noticed. The bonds of appellant are negotiable upon their face and those holding them are not bound to account to the payor as to the manner in which they become possessed of them, and their failure so to account, coupled

with their delay for some years to take steps to enforce the collection of the accruing interest, will not authorize a court to disregard the presumption arising from their possession, that they are held by persons who received them for value and in the usual course of trade. The testimony does not justify the conclusion that either Franklin, Curtis, Bradley or Lamsburg represent Goodman, the defaulting agent of the railroad company, nor that they purchased the bonds from him with knowledge that he was wrongfully converting them to his own use. There is nothing in the record conducing to show a combination between Cole and the railroad company in the litigation in the United States Circuit Court touching the fifty-two bonds held by him, and in the absence of such proof we are inclined to think that the compromise under which he was allowed to retain twenty-six of them will be regarded as conclusive of his title, when he seeks to enforce their collection. As to the fifty-three bonds attached by Bondurant's executor, appellant is entitled to relief.

We do not concur with the circuit judge as to the necessity for an absolute rescission of the contract of May 8, 1857. As matter of fact, up to the defalcation of the railroad company's agents in New York appellant had more than complied with all its undertakings. Whilst it had not satisfied the Boston debt, it was making arrangements to do so when it became due and had absolutely paid out nearly twelve thousand dollars more than the agreed price of the bond it had received, and had tendered the contemplated security by which it was to guarantee full compliance with its contract to pay for the 110 bonds at 66 2-3 cents to the dollar.

The inability of the railroad company to deliver the bonds at the time agreed upon did not relieve it of the obligation to make delivery as fast as it would repossess itself of them, and although the contract of May 8, 1858, can not be specifically enforced according to its tenor, yet as appellant is not and has not been in default it has the right to insist that it shall be enforced *pro tanto*. Hence, to the extent that the railroad company has secured possession of the bonds, appellant has the right to demand that they shall be surrendered and also to have compensation for the deficiency in the number of bonds that said company undertook to deliver. Story's Equity, Vol. 1, Secs. 779-780, and *Drewe v. Hanson*, 6th Vesey 678. As the bonds were not sold to appellant by number

or other description, the absolute title to no particular bond passed by the contract of sale, and if they had been attached by an ordinary creditor of the railroad company it might be a difficult matter to determine as to the relative equities of the purchaser and the attaching creditor, but as Bondurant was one of the directors of the railroad company, and represented it as such when the contract of May 8, 1857, was entered into, he was under obligations not only to that company, but to this appellant who dealt with it to use at least reasonable endeavors to secure possession of the bonds and place the company, whose agent he was, in a condition to comply with the contract he had in part negotiated, and he can not be allowed, when his exertions as a fiduciary are in part crowned with success, to turn that success to his own individual advantage. He must be regarded as receiving the bonds from Cole as the agent of the corporation he represented. The equity of appellant attached as soon as they came into his possession and is superior to his attachment lien. The same rule applies to the Foster bonds, twenty-seven in number. It results, therefore, that appellant is entitled to have these bonds together with the bond held by Weis, canceled by paying the accrued interest up to July 1, 1857, and 66 2-3 cents on the dollar on the face value of said bonds, with legal interest from that date.

Against the sum thus due from appellant to the railway company it has the right to have set off the damages sustained by reason of its being compelled to pay off in full with semi-annual interest at 7 per centum, the forty-nine bonds that the company permitted to pass into the hands of innocent holders. There being nothing in the record from which it can be inferred that the payment of the twenty-six bonds now held by Cole can be successfully resisted he will, for the purposes of this litigation, he placed as holding them in good faith. The compensation to which appellant is entitled on account of the inability of the railroad company to deliver these forty bonds at the contract price will be ascertained as follows: First ascertain the amount appellant will be compelled to pay on said forty-nine bonds, including interest at the rate of 7 per centum semi-annually from the 1st of July, 1857, until the bonds are due, and from this amount deduct the unpaid interest that may have accrued on said bonds up to July 1, 1857, with legal interest from that time until the bonds fall due.

Also the value of said forty-nine bonds, at 66 2-3 cents to the dollar, with legal interest from July 1, 1857, until the bonds are due. The balance found to remain will be damages appellant has sustained by the failure of the railroad company to comply with its contract of May 8, 1858, and the compensation to which it is entitled by reason thereof.

When this balance, together with the amount over-paid on the sixty-seven bonds originally delivered is deducted from the amount due on the fifty-four bonds herein directed to be cancelled, the balance due from appellant to the railroad company will be found, and this balance, if there be one, Bondurant's executor may have subjected to the payment of his judgment against said company.

The judgments in favor of Franklin, Curtis, Bradley and Lamsburg, and the judgment in favor of Bondurant's executor, so far as it relates to the 24 bonds held as purchasers, are affirmed, but the judgment subjecting the fifty-three Cole and Foster bonds to the payment of his judgment against the railroad company is reversed, and the cause is remanded for a judgment comformable to the principles of this opinion.

*Weis, Simpson, Wadsworth, for appellant.*

*Huston, Mulligan, Dulin, Turner, for appellee.*